IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:07-CV-492-BO

MARY V. TATE,

               Plaintiff,

v.                              O R D E R

FIRST-CITIZENS BANK & TRUST
COMPANY and DAVID
HOLLINGSWORTH,

               Defendants.

This matter is before the Court on Plaintiff's Motion to Amend/Correct and Defendants First-Citizens Bank & Trust Company ("FCB") and David Hollingsworth's ("Hollingsworth") Motions for Summary Judgment. Plaintiff argues that she should be allowed to amend her Response to Defendants' Motions for Summary Judgment. Defendant FCB argues that Plaintiff has failed to establish the elements of her claims of discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, *et seq.*, and that there is no action for "forced retirement." Defendant Hollingsworth argues that Plaintiff has failed to establish the elements of her claim for Intentional Infliction of Emotional Distress ("IIED") against him.

For the reasons stated below, Plaintiff's Motion to Amend/Correct is DENIED, FCB's Motion for Summary Judgment is DENIED, and Hollingsworth's Motion for Summary Judgment is DENIED.

I.  SUMMARY OF INSTANT DISPUTE

Taking the facts in the light most favorable to the Plaintiff, as the Court must in its analysis, the facts are as follows:

Plaintiff, a former financial services representative at FCB in Fort Bragg, North Carolina, endured two separate periods of harassment by her supervisor, Hollingsworth: one in 1996 and one from 2004-2006. Plaintiff began working for FCB full time in 1967 and Hollingsworth began working for FCB in 1974. Plaintiff has never had difficulty with any other employee or supervisor and Hollingsworth has not had any other complaints of sexual harassment filed against him.

Beginning in 1996, Hollingsworth stuck his hand in his pockets and fondled himself in front of Plaintiff on multiple occasions when the two of them were alone in his office. Hollingsworth would also greet Plaintiff into his office by leaning back in his chair, spreading his legs, and plainly making sexually suggestive gestures to Plaintiff. Plaintiff visited Hollingsworth's office on almost a daily basis for her work. This behavior lasted anywhere from two to six weeks before Plaintiff scheduled an appointment with Rudy Baker, FCB's Market Executive for the Fort Bragg area, so that she could report the incident to him.

FCB's Human Resources Department ("HR") conducted a one-day investigation, the results of which were inconclusive, and HR told Plaintiff the incident was "poor judgment" on Hollingsworth's part. Plaintiff was then asked to transfer to another, smaller branch, in order to assign a different supervisor to Plaintiff and separate Plaintiff and Hollingsworth. Plaintiff informed FCB she did not wish to transfer, but acquiesced when asked if she'd be willing to transfer. The size of the branch and its customer volume affected Plaintiff's ability to meet the

production goals necessary to receive incentive pay.

In 2000, after Plaintiff's supervisor retired, FCB re-appointed Hollingsworth as Plaintiff's supervisor. Though Plaintiff and Hollingsworth were working at separate branches at the time, the appointment made Plaintiff uncomfortable and she requested a transfer back to the main branch, where Hollingsworth was located, so she could be surrounded by people who were familiar with her history with Hollingsworth, such as Mr. Baker.

Her time at the main branch passed without incident from 2000 until Mr. Baker retired in July 2004. A few weeks after Mr. Baker retired, Hollingsworth again began fondling himself in front of Plaintiff when the two of them were alone in his office and continued to greet her into his office by leaning back in his chair, spreading his legs, and making sexually suggestive gestures. On three separate occasions, he touched Plaintiff's buttocks.

Hollingsworth made so many comments about Plaintiff's perfume that she stopped wearing it. He asked her on multiple occasions if she ever wanted to ask someone a question but wasn't sure if she should. Plaintiff left work a few times due to migraine headaches resulting from stress induced by Hollingsworth's actions. She left his office once prior to getting his approval on a document because she could not remain while he made sexually inappropriate gestures.

On Plaintiff's last day of work, March 14, 2006, Plaintiff went to Hollingsworth's office to discuss an NSF report and he again made a sexual gesture and looked her up and down and smirked at her. Plaintiff went to her doctor the following day and was ordered to stay out of work for one week. Plaintiff reported Hollingsworth the next day and another investigation was conducted, the results of which were once again inconclusive. Of the twelve people FCB

interviewed, only four indicated that they regularly worked with Hollingsworth in one on one situations. Ann Clark, who told Plaintiff that she saw Hollingsworth making sexual gestures, was not interviewed. Defendant FCB's Motion for Summary Judgment, Exhibit A, p. 27 (p. 72 of Plaintiff's deposition). FCB requested video footage of one of the alleged touching incidents and instead received various inconclusive still frames.

Plaintiff was diagnosed with post-traumatic stress disorder ("PTSD") and took medical leave from FCB until HR informed her that her medical leave time would expire in July 2006, at which point she was welcome to return to work, retire, or be fired. Plaintiff retired from FCB in July 2006. Hollingsworth was transferred to another branch.

On November 19, 2007, Plaintiff filed her Complaint in the Superior Court of the State of North Carolina, Cumberland County. FCB removed the action to this Court on December 14, 2007, and filed its Answer on December 21, 2007. Each Defendant filed a Motion for Summary Judgment on October 15, 2008. On November 17, 2008, Plaintiff filed a two-line Response. Defendants each filed a Reply on December 5, 2008. Plaintiff filed a Motion to Amend/Correct her Response on January 13, 2009. Defendants' Motions for Summary Judgment and Plaintiff's Motion to Amend/Correct were heard before the undersigned in Raleigh, North Carolina on March 27, 2009. These matters are now ripe for ruling.

## II.    DISCUSSION

A district court should grant summary judgment where there are no genuine issues of material fact for trial. FED. R. CIV. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party has the initial burden of establishing the lack of a genuine issue as to

any material fact, and if that burden is met, the party opposing the motion must "go beyond the pleadings" and come forward with evidence of a genuine factual dispute. *Celotex,* 477 U.S. at 324. The court must view the facts and the inferences drawn from the facts in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986), however, conclusory allegations and unsupported speculation are not sufficient to defeat a motion for summary judgment. *Cf. Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987).

For the reasons stated below, Plaintiff's Motion to Amend/Correct is DENIED, Defendant FCB's Motion for Summary Judgment is DENIED as to Plaintiff's Title VII discrimination claim, Plaintiff's retaliation claim, and Plaintiff's forced retirement claim, and Defendant Hollingsworth's Motion for Summary Judgment is DENIED.

### A. Plaintiff's Motion to Amend/Correct

Plaintiff's Motion to Amend/Correct is DENIED because the Federal Rules of Civil Procedure do not grant her the option of amending her response to Defendants' Motion for Summary Judgment. Plaintiff seeks to amend her Response pursuant to Fed. R. Civ. P. 15(a)(2). However, this rule applies only to the amendment of pleadings, which a response to a Motion for Summary Judgment is decidedly not. *See* Fed. R. Civ. P. 7(a) (limiting pleadings to complaints, answers, answers to counterclaims, answers to cross claims, third-party complaints, and replies to answers). Accordingly, Plaintiff's motion is DENIED.

### B. FCB's Motion for Summary Judgment

-5-

FCB has filed for Summary Judgment with respect to Plaintiff's claims that: (1) she was discriminated against based on her sex in violation of Title VII; (2) she was retaliated against in violation of Title VII; and (3) she was forced to retire. Each claim is discussed below.

## I. *Title VII Sexual Discrimination Claim*

Plaintiff has presented sufficient evidence to create a genuine issue as to whether she was discriminated against based on her sex because she has presented facts of unwelcome, severe or pervasive sexual harassment sufficient to create a hostile work environment, which can be imputed to FCB. To prevail on a Title VII hostile work environment claim, Plaintiff must establish that the offending conduct was: (1) unwelcome; (2) based on her gender; (3) sufficiently pervasive or severe to alter the conditions of her employment and to create a hostile work environment; and (4) imputable to FCB as her employer. *Matvia v. Bald Head Island Mgmt., Inc.*, 259 F.3d 261, 266 (4th Cir. 2001).

First, no one disputes that such conduct, if it did occur, was unwelcome.

Second, the alleged actions took place because Plaintiff is a female. "Without question, when a supervisor sexually harasses a subordinate because of the subordinate's sex, that supervisor discriminate[s] on the basis of sex." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986) (internal quotations omitted). Where challenged conduct typically involves explicit or implicit proposals of sexual activity, it is reasonable to assume those proposals would not have been made to someone of the same sex. *Oncale v. Sundowner Offshore Servs, Inc.*, 523 U.S. 75, 80 (1998). Plaintiff's supervisor sexually harassed her via implicit proposals of sexual activity through his repeated sexual gestures and his brushing of Plaintiff's behind on multiple occasions.

-6-

Third, the conduct was sufficiently severe or pervasive to alter the conditions of employment and create a hostile work environment because Plaintiff left work due to headaches caused by Hollingsworth's behavior and failed to complete assignments because of his behavior. "In order to clear the high threshold of actionable harm, the conduct in question must (1) be 'severe or pervasive enough to create an objectively hostile or abusive work environment' and (2) be subjectively perceived by the victim to be abusive." *EEOC v. R&R Ventures*, 244 F.3d 334, 339 (4th Cir. 2001) (quoting *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993)). Plaintiff has alleged, and no one disputes, that she found the actions to be abusive.

Hollingsworth's actions were severe and pervasive enough to create an objectively hostile or abusive work environment because the frequency and duration of the encounters interfered with Plaintiff's work performance and caused Plaintiff to suffer from PTSD. In determining whether a work environment is objectively hostile or abusive, courts consider the following factors: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; (4) whether the conduct unreasonably interfered with the plaintiff's work performance; and (5) what psychological harm, if any, resulted from the harassment. *Conner*, 227 F.3d at 193 (citing *Harris*, 510 U.S. at 23; *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 242 (4th Cir. 2000)).

Hollingsworth harassed Plaintiff on almost a daily basis for approximately 18 months with the severely humiliating displays. Hollingsworth's conduct unreasonably interfered with Plaintiff's work performance because Plaintiff left work early and left Hollingsworth's office prior to completing assignments as a result of his conduct. Plaintiff has been diagnosed with PTSD as a result of the actions.

Case 5:07-cv-00492-BO   Document 32   Filed 04/08/09   Page 7 of 13

Fourth, liability may be imputed to FCB because it failed to take reasonable measures to prevent the re-occurrence of the harassment. "The affirmative defense of *Faragher* and *Ellerth* allows an employer to avoid strict liability for a supervisor's sexual harassment of an employee if no tangible employment action was taken against the employee." *Matvia v. Bald Head Island Mgmt., Inc.*, 259 F.3d 261, 266 (4th Cir. 2001) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 808 (1998) and *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 765 (1998)). "Examples of tangible employment action include "discharge, demotion, or undesirable reassignment." *Matvia*, 259 F.3d at 266 (internal citations omitted).

No tangible employment action was taken.[1] If no tangible employment action was taken, the employer must establish "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise." *Matvia v. Bald Head Island Mgmt., Inc.*, 259 F.3d 261, 266-67 (4th Cir. 2001) (internal citations omitted). Although FCB exercised reasonable care in correcting sexual harassment by implementing an anti-harassment policy and conducting prompt investigations into allegations of harassment,[2] FCB failed to exercise reasonable care in preventing harassment when it re-assigned Hollingsworth to a supervisory position over Plaintiff less than four years after she filed her initial complaint.

---

[1] The only action which might qualify as tangible employment action, namely FCB's recommendation that Plaintiff transfer branches in 1996, is barred by the statute of limitations.

[2] *See Matvia*, 259 F.3d at 268 (holding that "dissemination of an effective anti-harassment policy provides compelling proof that an employer has exercised reasonable care to prevent and correct sexual harassment) (citing *Lissau*, 159 F.3d at 182).

-8-

Thus, genuine issues exist regarding whether Plaintiff was discriminated against based on her sex because she has presented facts of unwelcome, severe or pervasive sexual harassment sufficient to create a hostile working environment, which can be imputed to FCB and, accordingly, FCB's Motion for Summary Judgment is DENIED.

## II. Title VII Retaliation Claim

Plaintiff has alleged sufficient facts to create a genuine issue regarding whether FCB retaliated against her. "To make out a prima facie case of retaliation, [Plaintiff] must show (1) that [s]he engaged in a protected activity; (2) that [her] employer took an adverse employment action against [her]; and (3) that a causal connection existed between the protected activity and the asserted adverse action." *King v. Rumsfeld*, 328 F.3d 145, 150-51 (4th Cir. 2003), *cert. denied*, 540 U.S. 1073 (2003) (citing *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989).

Plaintiff engaged in a protected activity when she filed a complaint against Hollingsworth in March of 2006. FCB took an adverse employment action against Plaintiff when it forced her to choose to return to a work environment in which FCB had previously provided opportunity for continued unwanted sexual advances by Hollingsworth, to retire, or to be fired. FCB made this ultimatum after Plaintiff filed the complaint against Hollingsworth. As noted by the Fourth Circuit in *Williams v. Cerberonics, Inc.*, 871 F.2d 452 (4th Cir. 1989), "[w]hile this proof far from conclusively establishes the requisite causal connection, it certainly satisfies the less onerous burden of making a prima facie case of causality." *Id* at 457 (holding that Plaintiff made out a prima facie case of causality where she showed that she was fired after filing a complaint against

a supervisor).

While FCB has provided non-retaliatory reasons for providing Plaintiff the ultimatum that led to her retirement, Plaintiff has put on sufficient evidence for a jury to find pretext. *See Dotson v. Pfizer, Inc.*, 558 F.3d 284, 296-97 (4th Cir. 2009) (holding that plaintiff put on sufficient evidence of pretext when she showed that one of supervisor's frustrations stemmed from a missed deadline resulting from plaintiff's protected activity). It was FCB's assignment of Hollingsworth as Plaintiff's supervisor which provided the opportunity for Hollingsworth to continue to sexually harass Plaintiff to the point where she was medically unable to return to work, which medical leave FCB used to offer Plaintiff the ultimatum. Thus, summary judgment is DENIED as to Plaintiff's retaliation claim.

### III. *Forced Retirement Claim*

Plaintiff's "forced retirement" claim appears to be a hostile environment constructive discharge claim under Title VII. Plaintiff has alleged that she was forced to retire due to Hollingsworth's repeated sexual harassment, a fact pattern which exactly mimics the types of claims which fall into this category. Accordingly, Plaintiff's "Forced Retirement" claim will be construed as a hostile environment constructive discharge claim under Title VII.

Plaintiff has alleged sufficient facts to overcome summary judgment on a hostile environment constructive discharge claim because she has described in detail an environment so intolerable as to force a reasonable person to quit. "A plaintiff who advances such a compound claim must show working conditions so intolerable that a reasonable person would have felt compelled to resign." *Pennsylvania State Police v. Suders*, 542 U.S. 129, 147 (2004). "[T]he

-10-

Case 5:07-cv-00492-BO   Document 32   Filed 04/08/09   Page 10 of 13

facts alleged [for constructive discharge must be] ... so intolerable that a reasonable person would be forced to quit." *Id* (quoting *Breeding v. Arthur J. Gallagher & Co.*, 164 F.3d 1151, 1160 (C.A.8 1999)). "[H]arassment so intolerable as to cause a resignation may be effected through co-worker conduct, unofficial supervisory conduct, or official company acts." *Id* at 148.

Here, Plaintiff has alleged that her co-worker sexually harassed her on nearly a daily basis for 18 months. Therefore, she has alleged sufficient facts to create a genuine issue as to whether she was constructively discharged.

Though FCB is entitled to the *Ellerth/Faragher* affirmative defense in the hostile environment constructive discharge context, it has failed to meet the standards for utilization of the defense for the reasons stated above.[3] Therefore, genuine issues remain as to whether the harassment rose to the level of constructive discharge and FCB's Motion for Summary Judgment is DENIED.

### C. Hollingsworth's Motion for Summary Judgment

Plaintiff has provided sufficient facts to create a genuine issue as to whether Hollingsworth's actions were sufficiently extreme and outrageous. To prevail, Plaintiff must show "(1) extreme and outrageous conduct by the defendant; (2) which is intended to cause and does cause; (3) severe emotional distress." *Waddle v. Sparks*, 331 N.C. 73, 83-84, 414 S.E.2d 22, 27 (1992) (citing and quoting from *Dickens v. Puryear*, 302 N.C. 437, 276 S.E.2d 325

---

[3]Absent an official act, such as demotion or a reduction in compensation, "the extent to which the supervisor's misconduct has been aided by the agency relation... is less certain." *Suders*, 542 U.S. at 148-49. "That uncertainty, our precedent establishes... justifies affording the employer the chance to establish, through the *Ellerth/Faragher* affirmative defense, that it should not be held vicariously liable.

-11-

(1981)).

"It is a question of law for the court to determine, from the materials before it, whether the conduct complained of may reasonably be found to be sufficiently outrageous to permit recovery." *Brown v. Burlington Industries, Inc.*, 93 N.C. App. 431, 436, 378 S.E.2d 232, 235 (1989), *rev dismissed*, 326 N.C. 356, 388 S.E.2d 769 (1990) (quoting *Brown v. Burlington Indus., Inc.*, 93 N.C. APP. 431, 436, 378 S.E.2d 232, 235 (1989), *review dismissed*, 326 N.C. 356, 388 S.E.2d 769 (1990)). "However, once conduct is shown which may be reasonably regarded as extreme and outrageous, it is for the jury to determine, upon proper instructions, whether the conduct complained of is, in fact, sufficiently extreme and outrageous to result in liability." *Id.*

"Conduct is extreme and outrageous only where it is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Briggs v. Rosenthal*, 73 N.C. App. 672, 327 S.E.2d 308, 311, *cert. denied*, 314 N.C. 114, 332 S.E.2d 479 (1985). "The tort may also exist where defendant's actions indicate a reckless indifference to the likelihood that they will cause severe emotional distress." *Wilson by and Through Wilson v. Bellamy*, 105 N.C. APP. 446, 467, 414 S.E.2d 347, 359 (1992) (citing *Dickens v. Puryear*, 302 N.C. 437, 452-53, 276 S.E.2d 325, 355 (1981)).

The case law confirms what common sense suggests: the bounds of decency were breached by Hollingsworth's actions. In *Phillips v. J.P. Stevens & Co., Inc.*, No. 3:92CV00094, 1995 WL 794200, at *13 (M.D.N.C. May 1, 1995), the court held that the defendant's conduct was sufficiently extreme and outrageous where a supervisor "made sexually suggestive remarks

-12-

to [plaintiff] over an extended period of time, and during this period of harassment, physically touched [plaintiff] in a sexual manner several times." Here, Plaintiff alleges that Hollingsworth, her supervisor, made sexually suggestive movements over an extended period of time and unapologetically physically touched Plaintiff in a sexual manner multiple times.

In *Brown*, 93 N.C. APP. at 436, the North Carolina Court of Appeals held that the defendant's conduct was sufficiently extreme and outrageous when he made sexually suggestive remarks to the plaintiff three times a week for an extended period of time. Here, Defendant made sexually suggestive movements on nearly a daily basis for approximately 18 months.

Therefore, because Hollingsworth's actions may reasonably be regarded as extreme and outrageous, it is for a jury to determine whether his conduct is, in fact, sufficiently extreme and outrageous to result in liability. Accordingly, summary judgment is DENIED.

III. CONCLUSION

For the reasons stated above, Plaintiff's Motion to Amend/Correct is DENIED, Defendant FCB's Motion for Summary Judgment is DENIED as to Plaintiff's Title VII discrimination claim, retaliation claim, and forced retirement claim, and Defendant Hollingsworth's Motion for Summary Judgment is DENIED as to Plaintiff's IIED claim.

SO ORDERED, this __7__ day of April 2009.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE

-13-